1 **WO** KA
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8

| Garrett Miller-Cunningham, | No. CV 17-02098-PHX-JAT |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Michael MacAllister, | |
| Defendant. | |

Plaintiff Garrett Miller-Cunningham, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant Michael MacAllister,[1] moves for summary judgment, and Plaintiff opposes. (Docs. 37, 42.)

**I.  Background**

In his Complaint, Plaintiff relevantly alleged as follows. On March 4, 2016, Plaintiff was approached and questioned by Defendant MacAllister (hereinafter Defendant), a former City of Maricopa police officer, while Plaintiff was at a Circle K convenience store. (Doc. 1 at 10–11.) When Defendant learned that Plaintiff was carrying a handgun, Defendant arrested Plaintiff for allegedly unlawfully carrying a firearm after having been convicted of a felony, even though Plaintiff has never been convicted of a felony. (*Id.* at 12–13.) Defendant transported Plaintiff to the Pinal County Jail where he was booked and

---

[1] Pinal County was also named as a Defendant, but has been dismissed from the action. (*See* Doc. 26.)

incarcerated. (*Id.* at 15.) Plaintiff was incarcerated for approximately three months before the charge against him was dismissed. (*Id.* at 18–20.)

Plaintiff asserted claims of false arrest, false imprisonment, and malicious prosecution. (*Id.* at 27). He requested declaratory and injunctive relief, damages, costs, and attorney fees. (*Id.* at 29.)

Defendant previously sought to dismiss Plaintiff's Complaint claiming entitlement to qualified immunity. The Court denied the Motion to Dismiss on the ground that "factual allegations in the Complaint are incomplete as to what information was known to Defendant at the time of arrest." (Doc. 28 at 7.) Accordingly, the Court could not decide whether qualified immunity was appropriate at the motion-to-dismiss stage. (*Id.*)

Defendant now seeks summary judgment on the ground that he is entitled to qualified immunity. (Doc. 37.)

**II.  Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its

favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Facts**

On March 4, 2016 at 10:45 p.m., while on patrol, former City of Maricopa police officer Defendant MacAllister was dispatched to a Circle K convenience store in the City of Maricopa on reports from Plaintiff that he was being followed by a "gang of Mexicans." (Doc. 38 ¶ 3; Doc. 41 ¶ 3.) Plaintiff stated to dispatch that he had a "20-round clip" in "storage," and if he had his "AK pistol," he would have "enough for everybody." (*Id.*) Plaintiff admitted to having a Glock 23 handgun in his possession and that the weapon was in his waistband. (*Id.*)

Defendant and Officer Burnias arrived at the Circle K and approached Plaintiff, who raised his hands and showed the officers he had a firearm—a Glock 23 .40 caliber semi-automatic handgun. (Doc. 38 ¶ 4, Doc. 41 ¶ 4.) Defendant took possession of the firearm and conducted a stolen firearms check. (Doc. 38 ¶ 5, Doc. 41 ¶ 5.) Plaintiff told the officers that he was being followed and his cousin had "put a hit on him" from the drug cartels. (Doc. 38 ¶ 7, Doc. 41 ¶ 7.) Plaintiff pointed to a couple getting gasoline and stated that they had followed him from California. (Doc. 38 ¶ 8, Doc. 41 ¶ 8.) When the officers asked Plaintiff why he thought the couple were following him, he became agitated and told Officer Burnias to "just shoot" him and "get it over with." (Doc. 38 ¶ 9, Doc. 41 ¶ 9.) Plaintiff identified his vehicle for the Officers and Defendant approached the vehicle and noted a broken rear window. (Doc. 38 ¶ 10, Doc. 41 ¶ 10.) When Defendant asked about

the broken rear window, Plaintiff told him to stop asking "dumb-ass questions" and asked for his firearm back. (Doc. 38 ¶ 11, Doc. 41 ¶ 11.) Plaintiff stated he did not trust the Officers and called 9-1-1 dispatch, claiming the officers might "plant" something in his vehicle. (Doc. 38 ¶ 12, Doc. 41 ¶ 12.) Defendant disassembled the firearm and placed the disassembled pieces in the back of Plaintiff's vehicle. (Doc. 38 ¶ 13, Doc. 41 ¶ 13.) Defendant told Plaintiff he wished him a better day and the Officers left the scene. (Doc. 38 ¶ 14, Doc. 41 ¶ 14.)

Shortly after the first incident, Defendant was dispatched to the same scene, this time stemming from a complaint that a subject was standing outside the Circle K convenience store entrance allegedly holding a gun in his hand and acting suspiciously. (Doc. 38 ¶ 15.) Plaintiff denies that he ever held or brandished his gun, but does not dispute with any evidence that Defendant received a report that Plaintiff was holding a gun in his hand. (Doc. 41 ¶ 15.) Defendant and Officer Burnias returned to the Circle K and approached the subject of the complaint, who turned out to be Plaintiff, and detained him for questioning. (Doc. 38 ¶ 16, Doc. 41 ¶ 16.) Defendant spoke with Plaintiff, who was in possession of his reassembled firearm. (Doc. 38 ¶ 17, Doc. 41 ¶ 17.) Plaintiff told the officers he had not pulled his gun out. (Doc. 38 ¶ 18, Doc. 41 ¶ 18.)

Defendant spoke with a Circle K employee, who stated that Plaintiff had been outside the Circle K holding a gun in his hand, staring at passing vehicles, that customers had complained about Plaintiff, and that she wanted Plaintiff to leave the property. (Doc. 38 ¶¶ 19-20, Doc. 41 ¶ 20.) ) Plaintiff denies that he held or brandished his gun during this time, but does not dispute that this is what the Circle K employee told Defendant. (Doc. 41 ¶ 19. )

Defendant then conducted a "wants and warrants" check on Plaintiff that came back negative. (Doc. 38 ¶ 21, Doc. 41 ¶ 21.) Defendant then conducted a prior felony conviction check through the dispatch center and was advised that Plaintiff had multiple felony

convictions, including a conviction for grand theft of an automobile. (Doc. 38 ¶ 22.)[2] From his personal experience, Defendant believed dispatch information on a suspect's prior felony record was reliable and trustworthy. (*Id.*) The dispatch center stated that it was forwarding the criminal history report to Maricopa Police Department Sergeant Paulsen, who was also on the scene. (*Id.* ¶ 23)[3] Prior to that evening, Defendant received information from the same dispatch center on suspects' warrants, license status, and prior convictions and had never before received incorrect information. (Doc. 38 ¶ 24; Doc. 41 ¶ 24.)

As Defendant continued talking to Plaintiff, Sergeant Paulsen informed Defendant that Paulsen had confirmed that Plaintiff had prior felony convictions. (Doc. 38 ¶ 25.)[4] Defendant believed Sergeant Paulsen's information was based on a review of the criminal

---

[2] Plaintiff objects to this fact asserting that it is inadmissible hearsay under Rules 602 and 802 of the Federal Rules of Evidence. (Doc. 41 ¶ 22.) The assertion that dispatch told Defendant that Plaintiff had multiple felony convictions is not hearsay because it is not being offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) ("Hearsay means a statement that: . . . a party offers for the truth of the matter asserted in the statement."). Rather, Defendant offers this information to show what he believed and his state of mind when dispatch gave him this information. Defendant does not offer this fact to show that Plaintiff indeed had multiple felony convictions; rather, the Parties do not dispute that the information given was incorrect and Plaintiff did not have multiple felony convictions.

Moreover, although Plaintiff claims he objects under Rule 602 of the Federal Rules of Evidence because the information is hearsay, Rule 602 requires that a witness may only testify to evidence in his personal knowledge. Defendant may testify what dispatch told him; that information is necessarily in his personal knowledge. It is true that Defendant cannot testify that Plaintiff actually had felony convictions, but Defendant is not offering to admit that information.

[3] Plaintiff objects to this statement as hearsay. (Doc. 41 ¶ 23.) Because this information is not being offered for the truth of the matter asserted, Plaintiff's objection is overruled. *See supra* n.2.

[4] Plaintiff objects to this statement as hearsay. (Doc. 41 ¶ 25.) Because this information is not being offered for the truth of the matter asserted, Plaintiff's objection is overruled. *See supra* n.2.

history report provided to Paulsen by the dispatch center. (*Id.* ¶ 26.)[5] Defendant and Sergeant Paulsen, Defendant's on-scene supervisor, have worked together before, and Defendant considers him a reliable Sergeant. (*Id.* ¶ 27.)[6] Sergeant Paulsen told Plaintiff that he had reviewed the prior felony convictions,[7] but Plaintiff denied that he had a felony and repeatedly insisted to the officers that he did not have a felony. (Doc. 38 ¶ 28.)[8]

Plaintiff was then arrested on a criminal prohibited possessor charge pursuant to Arizona Revised Statutes § 13-3102(A)(4).[9] (Doc. 38 ¶ 1; Doc. 41 ¶ 1.) Defendant asserts that Officer Burnias placed handcuffs on Plaintiff and that Defendant took Plaintiff into custody from there, but Plaintiff asserts that Defendant placed handcuffs on him. (Doc. 38 ¶ 29; Doc. 41 ¶ 29.) The Court will construe this dispute in favor of Plaintiff for the purpose of deciding the motion for summary judgment, and will assume Defendant placed handcuffs on Plaintiff. Shortly after the arrest, Defendant wrote a probable cause statement indicating Plaintiff had prior felony convictions, including a 2007 conviction for felony DUI, a 2009 conviction for possession of a controlled substance, and a 2009 conviction for harm or death of an elder or dependent adult. (Doc. 38 ¶ 34; Doc. 41 ¶ 34.)

Plaintiff was ordered released on his own recognizance on March 5, 2016, with the next court appearance scheduled for March 22, 2016. (Doc. 38 ¶ 38; Doc. 41 ¶ 38.)

---

[5] Plaintiff objects to this statement as hearsay. (Doc. 41 ¶ 26.) This is not a statement, but rather Defendant's belief, and is therefore not hearsay. *See* Fed. R. Evid. 801(c) ("hearsay is a statement . . .").

[6] Plaintiff objects to this statement as hearsay. (Doc. 41 ¶ 26.) This is not a statement, but rather Defendant's belief, and is therefore not hearsay. *See supra* n. 5.

[7] Plaintiff objects to this statement as hearsay. (Doc. 41 ¶ 28.) Because this information is not being offered for the truth of the matter asserted, Plaintiff's objection is overruled. *See supra* n.2.

[8] It is undisputed that Plaintiff had not been convicted of any felonies and the report actually only reflected felonies for which Plaintiff had been charged.

[9] Arizona Revised Statutes § 13-3102 relevantly provides "A person commits misconduct involving weapons by knowingly . . . possessing a deadly weapon if such person is a prohibited possessor." Ariz. Rev. Stat. § 13-3102(A)(4).

Plaintiff failed to appear at his scheduled court date because he was later jailed in Riverside County, California on a subsequent criminal offense, and was ultimately extradited to Arizona and remained in jail during the pendency of his Arizona case. (Doc. 38 ¶ 39; Doc. 41 ¶ 39.) Plaintiff agrees that his subsequent confinement for failure to appear was not the fault of Defendant. (Doc. 38 ¶ 40; Doc. 41 ¶ 40.)

**IV. Discussion**

Defendant argues that Plaintiff has failed to state a claim upon which relief may be granted under the Fifth or Fourteenth Amendments and that he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim because his determination that there was probable cause to arrest Plaintiff was mistaken, but reasonable.

**A. Fifth and Fourteenth Amendment Claims**

Defendant argues that Plaintiff fails to state a claim upon which relief can be granted for violations of the Fifth and Fourth Amendments. Plaintiff did not respond to this argument in his response to Defendant's Motion for Summary Judgment. (*See generally* Doc. 42.) Defendant argues that it is unclear whether Plaintiff brings his Fifth Amendment claim pursuant to the due process clause or the self-compulsion clause of the Fifth Amendment, but in either case, Plaintiff has failed to state a claim upon which relief may be granted because the Fifth Amendment protects against due process violations of the federal government, the Fifth Amendment applies to state action through the Fourteenth Amendment, and there is no claim that there was an unconstitutionally procured statement in this case. Because Plaintiff did not respond and does not assert that he is seeking relief under the Fifth Amendment, his Fifth Amendment claim will be dismissed.

Defendant further argues that the Fourteenth Amendment does not apply when the Fourth Amendment provides constitutional protection for the conduct at issue. Because Plaintiff did not respond to this argument, the Court assumes that the Fourth Amendment provides adequate protection for the alleged constitutional violation at issue in this action. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (when "a particular Amendment provides an explicit textual source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process [under the Fourteenth Amendment], must be the guide for analyzing these claims") (citation and internal quotation marks omitted); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Accordingly, Plaintiff's Fourteenth Amendment claim will be dismissed.

### B. Fourth Amendment Claim

Defendant argues that he is entitled to qualified immunity because it was reasonable for him to believe there was probable cause to arrest Plaintiff because he based his belief on his own observation of Plaintiff possessing a handgun and he believed Plaintiff had been convicted of felonies based on his reliance on (1) the dispatch center stating Plaintiff had been convicted of multiple felonies, including grand theft of an automobile and (2) his Sergeant's review of Plaintiff's criminal history and resulting information from the Sergeant that Plaintiff had been convicted of a felony. Defendant argues that he had no reason to doubt the reliability of the dispatch center and his Sergeant because he had previously relied on both for correct information and guidance and had never been misled by either source.

In Response, Plaintiff argues that there is no evidence that the dispatcher told Defendant that Plaintiff had felonies because Defendant's testimony is hearsay. As the Court previously discussed, Defendant's testimony is not hearsay. Plaintiff next argues that "the name, address, telephone number, education, experience, qualifications and work history of the alleged dispatcher ha[ve not] been disclosed to [Plaintiff]." (Doc. 42 at 5.) There is no argument and no evidence in this record that Plaintiff ever sought such discovery or brought any discovery dispute to the Court's attention. Plaintiff has not properly sought relief pursuant to Rule 56(d) of the Federal Rules of Civil Procedure and has not explained why such discovery was unavailable to him.

Moreover, Plaintiff has failed to produce any evidence to create a disputed issue of material fact regarding whether the dispatcher and/or Paulsen told Defendant that Plaintiff had been convicted of felonies. Indeed, the only evidence before the Court shows that the dispatcher told Defendant that Plaintiff had felonies, the dispatcher e-mailed a report purportedly showing the felonies to Sergeant Paulsen, and Sergeant Paulsen told Defendant that Plaintiff had been convicted of felonies.

Instead of presenting evidence raising a dispute issue of fact, Plaintiff argued for the first time during oral argument that Defendant is not credible and that the Court cannot consider his affidavit in the absence of corroborating testimony from Sergeant Paulsen and the dispatcher confirming Defendant's version of events. To establish that Defendant is not credible, Plaintiff argued that Defendant's police report is inconsistent with his deposition testimony. Specifically, Plaintiff pointed to the section of the police report in which Defendant wrote "[Plaintiff] was asked about the [felony] convictions. [Plaintiff] advised he knew he had felony convictions, but he had already been arrested for them." (Doc. 38-1 at 5.) In his deposition, Defendant testified as follows:

> [Defendant]: On the way to—when we were processing him, [Plaintiff] kept on asking me like: Why am I being arrested? Why am I being arrested? It's not like everybody I arrested don't ask that a hundred times. You know, Like: Why am I being arrested? Why I am being arrest[ed]?
>
> And I kept telling him: Hey, man, you can't have a firearm in your possession as a felon and that's the reason why you're being arrested.
>
> And he was like, quote, like I remember him saying this, because I remember him saying it with Paulsen and everybody else, he kept saying: No. Those felonies are cleared. I have already been arrested for those felonies. I don't have any felonies out for me.
>
> And I was saying: It's not a warrant for your arrest. It's the fact that you are a felon. And he goes: I'm telling you, I've already been arrested for those felonies. And he goes: I know.

> I am a—he said on the way—and like I said, man, if I had my camera on, but he said on the way in: I know—I know I have felonies, but I've already been arrested for them. I don't have anything. I was like: Garrett, it's not a warrant. It's that you had felonies. You're right that's the reason why you can't have a firearm if you're a felon.
>
> [Plaintiff's Counsel]: Isn't it true, though, on the film he says he has no felonies?
>
> [Defendant]: Yes, absolutely.
>
> [Plaintiff's Counsel]: And he says that repeatedly?
>
> [Defendant]: Yes.

(Doc. 38-5 at 10-11.) Even assuming that impeaching Defendant's deposition testimony on a collateral issue is enough to disregard his affidavit as to what dispatch and Sergeant Paulsen told him, the Court disagrees with Plaintiff's counsel's assertion that Defendant's deposition testimony and the police report are inconsistent.

Regardless, Plaintiff's counsel's argument that the Court may not believe Defendant's undisputed testimony because Plaintiff's counsel believes that he lacks credibility is nothing more than conjecture. This conjecture is particularly troubling given that Plaintiff's counsel has had every opportunity to conduct discovery in this action and to determine if there is evidence contradicting Defendant's undisputed testimony, but has not produced any evidence contradicting Defendant's undisputed testimony. As discussed herein, Defendant's undisputed testimony, based on his personal knowledge, is admissible evidence that the Court may consider in deciding whether summary judgment is appropriate. In contrast, Plaintiff has not produced *any* evidence contradicting this undisputed testimony, and, as a result, there is no disputed issue of material fact regarding Defendant's testimony. *See, e.g.*, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("the nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim.").

Contrary to Plaintiff's counsel's assertion that the Court is necessarily determining Defendant's credibility by considering Defendant's undisputed testimony, the Court is not making a credibility determination, but is basing its decision on the only admissible evidence before the Court at summary judgment. Accordingly, the Court will conduct the qualified immunity analysis in light of the admissible evidence in the record.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, a court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009) (courts may address either prong first depending on the circumstances in the particular case).

The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The plaintiff has the burden to show that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). For qualified immunity purposes, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful. *Romero*, 931 F.2d at 627. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)

(citation omitted). The purpose of qualified immunity is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

"In the context of an unlawful arrest, . . . the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (emphasis in original).

The Fourth Amendment requires an arrest to be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause to arrest exists when officers have knowledge or reasonable trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Thus, when an officer has either knowledge or reasonable trustworthy information sufficient to lead a reasonable person to believe an offense has been, or is being completed by a specific individual, that officer has probable cause to arrest that individual. *Id.*

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Furthermore, when it comes to trustworthy and reliable information, the Ninth Circuit recognizes the collective-knowledge doctrine which allows one officer's knowledge of facts forming the basis of probable cause to be imputed to another law officer. *United States v. Jensen*, 425 F.3d 698, 704-05 (9th Cir. 2005) (the accepted practice of modern law enforcement is that an officer often makes arrests at the direction of another law enforcement officer even though the arresting officer himself lacks actual, personal knowledge of the facts supporting probable cause); *see also U.S. v.*

1 *Hensley,* 469 U.S. 221 (1985) (police officers are entitled to rely on radio bulletins on reasonable suspicion of other officers).

The undisputed facts before the Court show that Defendant relied on information provided by the dispatch office and Sergeant Paulson in determining that Plaintiff had previously been convicted of felonies. Although Plaintiff stated that he did not have a prior felony, these statements do not negate the reasonableness of Defendant's reliance. While it would have been ideal for Defendant to further inquire into the felonies based on Plaintiff's denial, it is not unusual for a suspect to deny guilt, and Defendant's reliance on dispatch and his Sergeant's averments that Plaintiff had been convicted of a felony was reasonable given that he had no reason to question the integrity of the information they gave to him. *See, e.g.*, *United States v. Miguel*, 368 F.3d 1150, 1154 (9th Cir. 2004) (officers had reasonable suspicion for a traffic stop where their reliance on a mistaken fact was reasonable and they had no reason to question the integrity of the information in the database), *overruled on other grounds by United States v. Gasca-Ruiz,* 852 F.3d 1167 (9th Cir. 2017); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) ("Rarely will a suspect fail to proffer an innocent explanation for suspicious behavior . . . officers do not have to rule out the possibility of innocent behavior" in determining whether there is probable cause to arrest.).

Defendant arrested Plaintiff only after the dispatch office communicated that Plaintiff had been convicted of one or more felonies, and after Sergeant Paulsen, Defendant's on-scene supervising officer, who was known to be a reliable source, also confirmed that Plaintiff had been convicted of one of more felonies. Indeed, despite both sources having given incorrect information to Defendant, a reasonable officer in Defendant's position would not have clearly known that his conduct was unlawful under the circumstances. Accordingly, Defendant is entitled to qualified immunity as to Plaintiff's Fourth Amendment claim and his Motion for Summary Judgment will be granted.

. . . .

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 37).

(2) Defendant's Motion for Summary Judgment (Doc. 37) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 12th day of March, 2019.

*[signature]*
James A. Teilborg
Senior United States District Judge